SOUTHRIDGE CORP.

v.

BOARD OF ENVIRONMENTAL PROTECTION et al.

Supreme Judicial Court of Maine.

Argued Nov. 3, 1994.
Decided March 2, 1995.

Robert H. Furbish (orally), Smith, Elliott, Smith & Garmey, P.A., Portland, for Kenneth Cormier.

Margaret Bensinger McCloskey, Asst. Atty. Gen., Augusta, for Bd. of Environmental Protection.

Alton C. Stevens (orally), Marden, Dubord, Bernier & Stevens, Waterville, for appellee.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

RUDMAN, Justice.

The Board of Environmental Protection (BEP) and Kenneth Cormier appeal from the judgment of the Superior Court (Kennebec County, *Mills, J.*) (1) vacating the BEP's decision affirming the Department of Environmental Protection's (DEP) grant of an after-the-fact permit and (2) remanding the matter to the BEP for further proceedings to determine Cormier's administrative standing. In light of the stipulation offered during oral argument before this court and subsequently confirmed in writing, further proceedings before the BEP are unnecessary. We therefore vacate that portion of the judgment remanding to the BEP. Further, because we disagree with the Superior Court that the pending adverse possession suit deprived Cormier of administrative standing to seek an after-the-fact permit, we remand to the Superior Court with instructions to enter a judgment affirming the decision of the BEP.

Funtown, situated on land owned by Cormier Landco and operated by Dalcor Amusement Corporation, is an amusement park, located on a 19.5 acre parcel of land in Saco. The land occupied by Funtown includes the .67 acre parcel currently the subject of a dispute between Cormier Landco and the Southridge Corporation. Cormier Landco claims title to the disputed parcel by adverse possession. The action to establish that claim remains unresolved.[1]

In February 1990, the DEP determined that the corporate entities controlling the land and the facilities comprising Funtown were in violation of the Natural Resources Protection Act, 38 M.R.S.A. § 480–C[2], and

---

1. The adverse possession action remains pending before the Superior Court, and its merits, therefore, are not before us.

2. 38 M.R.S.A. § 480–C sets forth in pertinent part:

    **1. Prohibition.** No person may perform or cause to be performed any activity listed in subsection 2 without first obtaining a permit from the department or in violation of the conditions of a permit, if these activities:

    **A.** Are in, on or over any protected natural resource; or

    **B.** Are on land adjacent to any freshwater or coastal wetland, great pond, river, stream

the Site Location of Development Law, 38 M.R.S.A. § 483–A.[3] The DEP permitted Cormier on behalf of Funtown's corporate owners to apply for an after-the-fact permit to remedy the violations.

Despite knowledge of the title dispute involving a small portion of the property Funtown occupies and the pending adverse possession action, the DEP approved Cormier's after-the-fact permit application. The DEP found the owners had demonstrated sufficient title, right or interest to the parcel implicated by the adverse possession dispute to allow it to consider the permit application.

Southridge, along with another adjacent landowner, appealed to the BEP on the basis that the owners had failed to demonstrate title, right or interest in the parcel implicated by the adverse possession dispute. Southridge argued that this dispute deprived Cormier of administrative standing to seek a permit as to the entire parcel Funtown occupies. The BEP affirmed the DEP's order granting the after-the-fact permit.

▇ Thereafter, Southridge appealed to the Superior Court, *see* M.R.Civ.P. 80C; 5 M.R.S.A. §§ 11001–11008 (1989 & Supp. 1994), alleging that the pending adverse possession action implicating a portion of the land deprived Cormier of administrative standing to seek a permit as to all of the property. Although Southridge named neither Cormier nor the owners in the appeal, Cormier's attorney was sent a copy of Southridge's petition for review by certified mail. Cormier, as agent for the owners, intervened on behalf of the Funtown interests and sought dismissal of the petition on the basis

that he was not made a party within the original appeal period.[4] We agree with the cogent reasoning of the Superior Court when it declined to dismiss Southridge's petition.

In this case, the petition for review containing all of the statutorily mandated information was filed within the appeal period on April 8, 1993. 5 M.R.S.A. § 11002(2)(3) (1989). Once Cormier moved to intervene and his motion was granted, he was permitted to file briefs and fully participate in this appeal. Therefore, his motion to intervene served the same purpose as a motion to join and he was not prejudiced in any way by the plaintiff's failure to join him as a party. Accordingly, the petition will not be dismissed.

The court, however, found that Cormier had failed to demonstrate sufficient title, right or interest in all of the property occupied by Funtown to maintain standing to seek the after-the-fact permit. First, the court found that the BEP's reliance on the affirmation of an attorney in finding that Cormier maintained sufficient interest in the property implicated by the pending adverse possession action was improper on the basis that "[s]uch evidence neither falls within the categories enumerated in the regulation nor demonstrates a legally enforceable interest which is not revocable at the will of the owners." Further, the court questioned Cormier's standing to seek a permit given the absence in the record before it of sufficient proof as to whom among Cormier, Cormier Landco, and Dalcor had title to the remainder of the property. The court remanded

---

or brook and operate in such a manner that material or soil may be washed into them.
    **2. Activities requiring a permit.** The following activities require a permit: ...
    C. Filling, including adding sand or other material to a sand dune....
38 M.R.S.A. § 480–C (1989 & Supp.1994).

**3.** 38 M.R.S.A. § 483–A provides in part:
    No person may construct or cause to be constructed or operate or cause to be operated, or, in the case of a subdivision, sell or lease, offer for sale or lease or cause to be sold or leased, any development that may substantially affect *the environment without first having obtained* approval for this construction, operation, lease or sale from the department.

38 M.R.S.A. § 483–A (Supp.1994).

**4.** "[A]ny person who is aggrieved by final agency action shall be entitled to judicial review thereof in the Superior Court...." 5 M.R.S.A. § 11001(1). Other than a party to the original proceeding, any "person aggrieved shall have 40 days from the date the decision was rendered to petition for review." 5 M.R.S.A. § 11002(3). "The petition for review shall be served by certified mail, return receipt requested, upon ... [t]he agency; ... [a]ll parties to the agency proceeding; and ... [t]he Attorney General." 5 M.R.S.A. § 11003(1).

the case to the BEP for further proceedings to determine the ownership rights to that portion of the property that is not implicated by the pending adverse possession action.

*The Remand*

Although Cormier individually has no legal authority to bind the owners and operators of Funtown, the after-the-fact permit was issued in his name. The stipulation, however, offered by Cormier's counsel at oral argument alleviates the need for further proceeding before the BEP. Both the owners of the real estate occupied by Funtown and the operators of the amusement park agree to be bound by our actions and those of the BEP.

*Standing*

 The DEP will review an application for a permit only when the applicant has demonstrated "sufficient title, right or interest in all of the property which is proposed for development or use." As we explained in *Murray v. Town of Lincolnville,* 462 A.2d 40, 43 (Me.1983), an "applicant for a license or permit to use property in certain ways must have 'the kind of relationship to the ... site,' that gives him a legally cognizable expectation of having the power to use that site in the ways that would be authorized by the permit or license he seeks." (*citing Walsh v. City of Brewer,* 315 A.2d 200, 207 (Me.1974)).

We disagree with Southridge's contention that the record does not sufficiently demonstrate Cormier Landco's interest in the property. Funtown's septic system has existed on the disputed parcel for a long period of time. This long established business practice, unchallenged by Southridge for many years, provides sufficient evidence of interest to support the administrative determination that Cormier and the entities he represents had standing to seek the after-the-fact permit. *See Murray,* 462 A.2d at 43.

In *Murray,* we found that a purchase and sale agreement, conditioned upon the seller's acquisition of any necessary subdivision approval conferred on the purchaser sufficient interest in the property to have the requisite standing to petition the BEP for approval to build on the property. *Murray,* 462 A.2d at 43. We commented that "[t]he fact that the [purchasers] could opt out of the purchase in certain circumstances does not deprive them of standing, any more than the owner of property in fee simple could be said to lack standing because he has the right to sell his land at any time." *Murray,* 462 A.2d at 43.

We fully acknowledge that it is possible that Cormier may not prevail in his adverse possession claim to the Southridge property. Should this happen, his permit might be revoked. This possibility, however, neither deprives Cormier and those he represents of their current interest in the land nor their administrative standing. We discern no substantive difference between the interest asserted in *Murray* and Cormier's asserted interest in the disputed property.

The entry is:

Judgment vacated. Remanded for entry of a judgment affirming the decision of the Board of Environmental Protection.

All concurring.