STATE OF MAINE
CUMBERLAND, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CUMSC-AP-15-0040

TIMOTHY NANGLE and ELIZABETH
NANGLE,

        Plaintiffs-Appellants,

        v.

TOWN OF WINDHAM, MICHAEL
MANNING, MGM BUILDERS, INC., &
ERNEST VALENTE,

        Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ORDER ON RULE 80B APPEAL

STATE OF MAINE
Cumberland, ss, Clerk's Office

FEB 24 2016

RECEIVED

Plaintiffs-Appellants Timothy and Elizabeth Nangle (the "Nangles") appeal from a decision by the Town of Windham Planning Board pursuant to Maine Rule of Civil Procedure 80B. Based on the following, the Nangles appeal is denied. The decision of the Town of Windham Planning Board is affirmed.

## I. BACKGROUND

On July 2, 2015, Michael Manning, MGM Builders, Inc., and Ernest Valente (collectively, the "Applicants") submitted an application to the Town of Windham Planning Board (the "WPB") for final site plan review. (R. 1.) The Applicants sought approval of their site plan for the construction of a 2,000-foot private road connecting River Road, a public roadway, to Evans Ridge Road, a private road. (*Id.*) The proposed road would be located over two properties referred to as Lot 21 and Lot 22 on the Town of Windham Tax Map 5. (*Id.*)

Initially, the application was comprised of three applications for each phase of the project. (*Id.*) Manning was the applicant for Phase 1, MGM Builders, Inc. was the applicant for Phase 2, and Ernest Valente was the applicant for Phase 3. (*Id.*) The preliminary site plans, the

revised site plans, and the road survey plan submitted with the application showed that, as part of Phase 3, the Applicants intended to connect the proposed road to Evans Ridge Road where Evans Ridge Road crosses a parcel of land referred to as Lot 21-3C.[1] (R. 37, 42, 45.) Included in the application was a copy of an access easement deed, dated June 2, 2010, purporting to grant Michael S. Manning an easement to use Evans Ridge Road as it crosses Lot 21-3C. (R. 20.)

The WPB's Staff Review Committee held a site walk on July 27, 2015, and reviewed the application on July 28, 2015. (R. 48.) A public hearing on the Applicants' site plan was held during the WPB's August 10, 2015 meeting. (R. 58.) A representative spoke on behalf of the Applicants. (*Id.*) The Applicants' representative informed the WPB that the application was no longer three separate applications with three separate applicants. (*Id.*) The application was now a single application by the three Applicants. (*Id.*)

Mr. Nangle spoke at the public hearing. (R. 61-62.) Mr. Nangle asserted that Evans Ridge Road ran across his property and that he had an easement to use Evans Ridge Road. (R. 62.) Mr. Nangle asserted that connecting the proposed road to Evans Ridge Road would overburden his easement because there was no way to control access and egress over Evans Ridge Road or prevent others from crossing his property. (R. 61-62.)

Following the public hearing, the Applicants' counsel sent an email to the WPB on August 21, 2015. (R. 76.) The email sought to address issues raised by WPB's attorney regarding whether the Applicants' had demonstrated sufficient right, title, or interest in order to connect the proposed road to Evans Ridge Road. (R. 73-76.) Attached to the email was another

---

[1] According to the preliminary plans, the revised plans, and the proposed road survey contained in the record, Lot 21-3C is owned by Eric Kollman-Furnish, Maya Kollman, and Barbara Bingham. (R. 37, 42, 45.) Though Mr. Kollman-Furnish did appeared before the WPB at the August 10, 2015 public hearing, the owners of Lot 21-3C are not parties to this Rule 80B appeal. (R. 63.)

2

copy of the June 2, 2010 access easement deed purporting to grant Michael S. Manning the right to use Evans Ridge Road where it crosses Lot 21-3C. (R. 77.)

The Applicants' site plan was discussed again at the WPB's August 24, 2015 meeting. (R. 82.) Mr. Nangle and Elizabeth Nangle both spoke during the meeting. (R. 83-84, 88-89.) Mr. Nangle asserted that the Applicants' right, title, or interest to use land in the manner for which they sought approval had not been fully investigated by the WPB. (R. 84.) Mr. Nangle again asserted that people would use Evans Ridge Road to cross his property despite the fact that they were not paying to maintain Evans Ridge Road. (R. 88.)

On August 25, 2015, the WPB issued a letter informing the Applicants that the WPB had approved their site plan to construct a new private roadway. (R. 95.) The letter contained the WPB's findings of fact and conclusions. (R. 96-99.) The WPB considered the Applicants' site plan for the proposed road as a single application. (R. 95-99.) The WPB found that the proposed road would in fact connect to Evans Ridge Road. (R. 96.) The WPB found that sufficient evidence of the Applicants' right, title, or interest to connect the proposed road to Evans Ridge Road at Lot 21-3C had been provided in the email from Applicants' counsel. (*Id.*)

On September 23, 2015, the Nangles filed a complaint against the Town of Windham and the Applicants pursuant to Rule 80B, appealing the WPB's decision.[2] The Nangles filed their

---

[2] Recently, in *Bryant v. Town of Camden*, the Law Court clarified the need for finality in municipal decisions before the municipal agency's decision may be appealed to the courts. *Bryant v. Town of Camden*, 2016 ME 27, ¶ 1, __ A.3d __. In that case, the town's ordinances required the applicant to obtain a special exception permit from the zoning board of appeals before seeking site plan approval from the town planning board. *Id.* ¶ 2. Appeals from the planning board's decision regarding site plan approval would be taken to the zoning board of appeals, from which an aggrieved party may appeal to this court. *Id.* ¶ 16. However, the appellant in that case appealed the zoning board of appeals' granting of a special exception permit to the courts before any action had been taken on the site plan by the planning board or the zoning board of appeals. *Id.* ¶ 19. The Law Court held that appellant had not exhausted the administrative remedies and that there was no final agency action for the courts to review until the planning board and the zoning board of appeals had fully considered the site plan. *Id.* ¶ 20.

This case does not present the same sort of problems regarding exhaustion of administrative remedies and whether there has been a final agency action. Maine's statute on planning and land use regulation

3

brief and copy of the administrative record on November 2, 2015. The Town of Windham filed its brief on December 1, 2015.[3] The Applicants filed their brief on December 2, 2015. The Nangles also filed a reply brief on December 16, 2015. Oral argument was held on January 26, 2016.

## II.    WHETHER THE NANGLES HAVE STANDING TO BRING THIS APPEAL

As a threshold matter, the Applicants assert that the Nangles do not have standing to pursue this appeal. (Applicants' Br. 3.) In order to have standing to bring a Rule 80B appeal, the appellants must prove (1) that they were a party at the administrative proceeding, and (2) that they have suffered a particularized injury as a result of the agency's decision. *Norris Family Assocs., LLC v. Town of Phippsburg*, 2005 ME 102, ¶ 11, 879 A.2d 1007.

For the purposes of Rule 80B, the term "party" is broadly interpreted to mean an "any participant in the proceedings who is aggrieved" by the decision of the municipal agency. *Id.* ¶ 16. "Participation" in the municipal proceeding may be formal or informal, in person or through an attorney. *Id.* The "party" is not required to have initiated the municipal proceeding from which the appeal is sought. *Id.*

---

provides: "Any municipality which adopts a zoning ordinance shall establish a board of appeals." 30-A M.R.S. § 4353. "The board of appeals shall hear appeals from any action or failure to act of the official or board responsible for enforcing the zoning ordinance, unless only a direct appeal to Superior Court has been provided by municipal ordinance." *Id.* § 4353(1). Section 815 of Windham's land use ordinances provides: "Appeal of any actions taken by the Planning Board with respect to this section shall be to the Superior Court in accordance with the Maine Rules of Civil Procedure, Rule 80B." Windham, Me., Land Use Ordinance § 815(B) (Oct. 22, 2009). Therefore, under 30-A M.R.S. § 4353 and Ordinance § 815, the WPB's decision constitutes a final agency action and the Nangles were permitted to appeal the decision directly to this court. *See Hodsdon v. Town of Hermon,* 2000 ME 181, ¶ 3, 760 A.2d 221.

[3] Attached to Town of Windham's brief was a copy of its tax map, which was not included in the record. (Town of Windham Br. 3 n.2.) When the court reviews municipal agency action pursuant to Rule 80B, except where otherwise provided by statute or rule, the court's review "shall be based upon the record of the proceedings before the governmental agency." M.R. Civ. P. 80B(f). Therefore, the court may not consider the tax map attached to the Town of Windham's brief.

4

When the appellant is an abutting landowner, the requirements for establishing a particularized injury are minimal. *Witham Family Ltd. v. Town of Bar Harbor*, 2011 ME 104, ¶ 15, 30 A.3d 811. "An abutting landowner has a particularized injury if there is a conceivable injury." *Norris Family Assocs.*, 2005 ME 102, ¶ 19, 879 A.2d 1007 (internal quotation marks and citation omitted). The abutting landowner need only assert a "reasonable allegation of a potential for particularized injury" or "a relatively minor adverse consequence" in order to establish standing. *Witham Family Ltd.*, 2011 ME 104, ¶ 15, 30 A.3d 811 (internal quotation marks and citation omitted); *Norris Family Assocs.*, 2005 ME 102, ¶ 19, 879 A.2d 1007.

Here, the Applicants do not dispute that the Nangles participated in the proceeding before the WPB. (Applicants Br. 3.) Rather, the Applicants only contend that the Nangles have not demonstrated a particularized injury. *Id.* The record discloses that the Nangles are abutting landowners. The preliminary plans, the revised plans, and the proposed road survey contained in the record demonstrate that Timothy E. Nangle and Elizabeth Day Nangle are the owners of Lot 21-2, which abuts Lot 21 on which the proposed road would be constructed. (R. 36-37, 41-42, 45.) The application and the site plans contained in the record disclose that the Applicants intend to connect the proposed road to the existing Evans Ridge Road. (R. 1, 37, 42.) The WPB found that the proposed road would in fact connect to Evans Ridge Road. (R. 96.) Mr. Nangle appeared at the August 10 and 24, 2015, meetings of the WPB and asserted that Evans Ridge Road ran across his lot and that he had an easement to use Evans Ridge Road; that connecting the proposed road to Evans Ridge Road would overburden his easement because there was no way to control access and egress over Evans Ridge Road or prevent others from crossing his property; and that the people would use Evans Ridge Road to cross his property despite the fact that they were not paying to maintain Evans Ridge Road. (R. 61-62, 83-84, 88-89.)

5

The record sufficiently discloses that the Nangles are abutting properties owners. Thus, the Nangles need only put forth a "reasonable allegation of a potential for particularized injury." *Witham Family Ltd.*, 2011 ME 104, ¶ 15, 30 A.3d 811. Because the Nangles asserted before WPB that connecting the proposed road to Evans Ridge Road would overburden their easement to use Evans Ridge Road, the record contains sufficient allegations of a conceivable injury. Therefore, the Nangles have met their minimal burden as abutting landowners and have standing to pursue this appeal.

## III. WHETHER THE APPLICANTS HAVE ADMINISTRATIVE STANDING TO PURSUE THEIR APPLICATION

Turning to the Nangles' argument on appeal, the Nangles argue that the WPB's finding that the Applicants had sufficient right, title, or interest to connect the proposed road to Evans Ridge Road was "clearly erroneous and unsupported by substantial evidence in the record before it." (Nangle Br. 4.)

### A. Standard of Review

When reviewing the decision of a municipal planning board pursuant to Maine Rule of Civil Procedure 80B, the court reviews the decision of the planning board "for abuse of discretion, errors of law, or findings not supported by the substantial evidence in the record." *Wyman v. Town of Phippsburg*, 2009 ME 77, ¶ 8, 976 A.2d 985 (internal quotation marks and citation omitted). The party seeking to vacate the decision bears the burden of persuasion on appeal. *Bizier v. Town of Turner*, 2011 ME 116, ¶ 8, 32 A.3d 1048.

The interpretation of a local ordinance is a question of law that the court reviews *de novo*. *Rudolph v. Golick*, 2010 ME 106, ¶ 8, 8 A.3d 684. The court examines the ordinance for its plain meaning. *Id.* ¶ 9. If the meaning of the ordinance is clear on its face, the court looks no

further. *Id.* However, the planning board's characterizations or findings of fact as to what meets ordinance standards will be accorded substantial deference. *Id.* ¶ 8.

B.      Administrative Standing

Section 802(A) of Windham's land use ordinance provides: "A person who has right, title, or interest in a parcel of land shall obtain site plan approval prior to commencing any of the following activities on the parcel,..." Windham, Me., Land Use Ordinance § 802(A) (Oct. 22, 2009). Section 811(B)(1)(c)(4) of Windham's land use ordinance requires that final site plan applications include: "A copy of a deed to the property, an option to purchase the property or other documentation to demonstrate right, title or interest in the property on the part of the applicant." Windham, Me., Land Use Ordinance § 811(B)(1)(c)(4) (Oct. 22, 2009). Thus, under these ordinances, applicants must produce sufficient evidence of right, title, or interest in the property in order to have administrative standing to pursue their application. *Murray v. Lincolnville*, 462 A.2d 40, 42-43 (Me. 1983).

The Law Court has held that the evidence of right, title, or interest provided by applicants need only demonstrate that the applicants have a relationship to the property that gives them "a legally cognizable expectation of having the power to use that site in the ways that would be authorized by the permit or license." *Id.* at 43. The mere possibility that applicants do not have the actual rights to use the property as they seek, and that approval might later be revoked, does not deprive applicants of administrative standing. *Southridge Corp. v. Bd. of Envtl. Prot.*, 655 A.2d 345, 348 (Me. 1995).

Furthermore, a municipal agency has only those powers conferred to it by statute. *Rockland Plaza Realty Corp. v. La Verdiere's Enters., Inc.*, 531 A.2d 1272, 1274 (Me. 1987). Municipal authorities have no power to adjudicate property rights or questions of title. *Id.* at

7

1273-74. Municipal authorities also have no power to interpret easements or covenants, which are private agreements between landowners. *Portland Museum of Art v. Town of Scarborough*, 2012 Me. Super. LEXIS 53, at *9 (Jan. 27, 2012) (citing *Whiting v. Seavey*, 159 Me. 61, 67-68,188 A.2d 276, 280-81 (1963)).

Here, the land use ordinances grant the WPB only "review and approval authority" over site plans. Windham, Me., Land Use Ordinance § 803(A) (Oct. 22, 2009). Thus, § 802(A) and § 811(B)(1)(c)(4) do not authorize the WPB to determine whether applicants have an actual right, title, or interest to use the property. Rather, the ordinances only require the WPB to determine whether the evidence of right, title, or interest put forth by applicants was sufficient to find that applicants have at least "a legally cognizable" right to use the property in the manner for which they seek approval.

The Law Court has previously determined that evidence of interests in land less than a fee simple were sufficient evidence of right, title, or interest to confer administrative standing. In *Murray v. Lincolnville*, the Law Court held that a contract to purchase land conditioned upon the seller obtaining subdivision approval was sufficient evidence of right, title, or interest to confer administrative standing. *Murray*, 462 A.2d at 41. In *Southridge Corp.*, the applicant's pending adverse possession claim based on the existence of a septic system on the property was also sufficient evidence of right, title, or interest to confer administrative standing. *Southridge Corp.*, 655 A.2d at 348.

This court has also found evidence of interests in land less than a fee simple were sufficient evidence of right, title, or interest. In *Crispin v. Town of Scarborough*, the court held that an option agreement constituted sufficient evidence of right, title, or interest to use the land in order for the applicant to seek approval to relocate a right of way, to use a private residential

8

driveway for a commercial facility, and to open the private driveway to the public. *Crispin v. Town of Scarborough*, 1998 Me. Super. LEXIS 187, at *8 (July 24, 1998). In *CPSP, LLC v. City of South Portland*, the court held that written consent from a subsidiary company that owned the property ratifying, confirming, and approving a parent company's application to a municipal agency was sufficient evidence of right, title, or interest to confer administrative standing on the parent company. *CPSP, LLC v. City of S. Portland*, 2008 Me. Super. LEXIS 126, at *5 (July 8, 2008). In *Horton v. Town of Casco*, the court held that a lease for a portion of a parcel and a deed for the entire parcel demonstrating that the parcel was entitled to utilize a right of way was sufficient evidence that the lessee had right, title, or interest to in right of away to confer administrative standing on the lessee. *Horton v. Town of Casco*, 2012 Me. Super. LEXIS 112, at *9 (Aug. 16, 2012). The fact that the lessee's right to use the right of way was subject to a separate quiet title action did not deprive the applicant of administrative standing. *Id.* at *9 n.8. Thus, these cases demonstrate that the threshold for establishing right, title, or interest in order to have administrative standing is decidedly very low.

C. The Nangles Contentions on Appeal

The Nangles argue that the Applicants do not have sufficient right, title, or interest for two reasons. First, the Nangles argue there is no evidence that the Applicants have sufficient right, title, or interest that would permit them to connect the proposed road to Evans Ridge Road. (Nangle Br. 5-6.) Specifically, the Nangles assert that neither MGM Builders, Inc. nor Valente have an interest in Lot 21-3C, where the proposed road will connect to Evans Ridge Road. (*Id.*)

The initial application had been submitted to the WPB as three applications with Valente as the applicant for Phase 3, where the proposed road will connect to Evans Ridge Road at Lot 21-3C. (R. 1-5.) However, according to the minutes from the August 10, 2015 meeting, the

9

applications had become a single application by the three Applicants. (R. 58.) The WPB's approval letter and its findings of fact and conclusions considered the Applicants' site plan for the proposed road as a single application. (R. 95-99.) The WPB found that sufficient evidence of the Applicants' right, title, or interest to connect the proposed road to Evans Ridge Road at Lot 21-3C had been provided in the email from Applicants' counsel. (R. 96.) The email contained a copy of the June 2, 2010 access easement deed purporting to grant Manning a right of way easement to use Evans Ridge Road as it crosses Lot 21-3C. (R. 77.)

This court must give substantial deference to the WPB's characterizations or findings of fact as to what meets its ordinance standards. *Rudolph*, 2010 ME 106, ¶ 8, 8 A.3d 684. Therefore, the WPB's determination that the applications by Manning, MGM Builders, Inc., and Valente should be considered a single application and its determination that the evidence of Manning's right to use Evans Ridge Road was sufficient evidence right, title, or interest for all of the Applicants in order to satisfy § 802(A) and § 811(B)(1)(c)(4) of its ordinance must be accorded substantial deference. Furthermore, the fact that there may be questions about whether certain Applicants can in fact rely on Manning's right to use Evans Ridge Road does not deprive the Applicants of administrative standing. *Southridge Corp.*, 655 A.2d at 348.

Second, the Nangles argue that the June 2, 2010 access easement deed purporting to grant Manning the right to use Evans Ridge Road is not sufficient evidence of right, title, or interest to permit the Applicants to connect the proposed road to Evans Ridge Road at Lot 21-3C. (Nangle Br. 6-8.) The Nangles assert that, if the access easement deed is an easement appurtenant, then Manning has not provided evidence that Manning owned any property benefited by Evans Ridge Road at the time the easement deed was granted or that he currently owns any property with a right to use Evans Ridge Road. (*Id.* at 7.) If the access easement deed was an easement in gross,

10

the Nangles assert that the easement is personal to Manning and not assignable to others or to lots that may be developed elsewhere on Evans Ridge Road. (*Id.* at 7-8.)

The WPB has only the authority to review and approve or disapprove the site plan. Windham, Me., Land Use Ordinance § 803(A). The WPB has no authority to adjudicate property rights or interpret easements. *Rockland Plaza Realty Corp.*, 531 A.2d at 1273-74; *Portland Museum of Art*, 2012 Me. Super. LEXIS 53, at *9 (citing *Whiting*, 159 Me. at 67-68, 188 A.2d at 280-81). Thus, the WPB had no authority to determine whether the June 2, 2010 access easement deed was an easement appurtenant or an easement in gross; whether Manning held property benefited by the access easement deed; or, whether the easement was assignable to other persons or other lots. Furthermore, the possibility that Manning may not have any actual right to use Evans Ridge Road in the manner for which the Applicants seek approval, does not deprive the Applicants of administrative standing. *Southridge Corp.*, 655 A.2d at 348. Under § 802(A) and § 811(B)(1)(c)(4), the WPB was only required to determine whether the Applicants had produced sufficient evidence of right, title, or interest demonstrating "a legally cognizable expectation of having the power" to use the property the manner for which they sought approval. *Murray*, 462 A.2d at 43. Therefore, the WPB had no authority to determine these issues.

D.      The WPB's Decision

The WPB found that evidence of the Applicants' right, title, or interest to connect the proposed road to Evans Ridge Road at Lot 21-3C had been provided in the email from the Applicants' counsel. (R. 96.) That email contained a copy of the June 2, 2010 access easement deed. (R. 77.) The June 2, 2010 access easement deed purports to grant Michael S. Manning the following:

> A perpetual right of way easement, for access and egress on foot and with vehicles, for establishing, constructing, using and maintaining a drive or

11

roadway,... over, under, and across the following described parcels of land, being a portion of premises known as the private way known as Evans Ridge Road, Windham, Cumberland County, State of Maine conveyed to the Grantor herein by warranty deed to John W. Manning by Michael S. Manning dated February 5, 2001, and recorded in the Cumberland County Registry of Deeds in Book 16006, Page 171 (also known as Lot 3-3 or Windham Tax Map 5, Lot 21-3C)...

(R. 77.) This access easement deed appears, on its face, to grant Manning the right to use the portion of Evans Ridge Road that crosses Lot 21-3C for access and egress and for establishing, constructing, using and maintaining a drive or roadway. Therefore, this access easement deed is sufficient evidence that one of the Applicants has "the kind of relationship to" the property that gives them at least "a legally cognizable expectation of having the power" to connect the proposed road with Evans Ridge Road where it crosses Lot 21-3C. *Murray*, 462 A.2d at 43. Therefore, the WPB's conclusion that the Applicants had produced sufficient evidence of right, title, or interest in the property to have administrative standing under § 802(A) and § 811(B)(1)(c)(4) was supported by substantial evidence in the record. Furthermore, because the threshold for establishing right, title, or interest in order to have administrative standing is very low, and because courts have held that evidence of interests in land less than a fee simple are sufficient to establish administrative standing, this court cannot conclude that the WPB's determination was an error of law.

12

## IV.  CONCLUSION

Based on the foregoing, Plaintiffs-Appellants Timothy and Elizabeth Nangle's Rule 80B appeal is denied.  The Town Windham Planning Board's decision is affirmed.

The Clerk is directed to enter this Order on the civil docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Date:  2/23/16

Lance E. Walker
Justice, Superior Court

13